SOUTHERN SURETY COMPANY *v.* PERDUE.

Opinion delivered May 6, 1918.

SURETY CONTRACT—DURATION.—A contract of insurance, guaranteed the faithful performance of a contract, the contract being for the construction of a road to be completed within one year. The road was not completed within a year, due to the fault of the improvement. *Held*, after receipt of notice by the insured, that the surety could not collect a second year's premium on the surety contract.

Appeal from Jefferson Circuit Court; *W. B. Sorrells,* Judge; affirmed.

*Bridges, Wooldridge & Wooldridge,* for appellant.

1. The defendants were liable for the second premium. The blank in the application was properly filled. 105 Ark. 243; 96 *Id.* 110; 2 Cyc. 159.

2. The contract was not void for lack of mutuality. 96 Ark. 184-8. Defendants received the benefits of the bond. 91 Ark. 367; 94 *Id.* 12; 113 *Id.* 556, 563. See also, 9 Cyc. 329; 45 N. Y. 45; 6 Am. Rep. 31; 6 R. C. L. 689.

3. The court erred in admitting the testimony of witness Perdue. It varied the terms of the written contract.

*Caldwell & Triplett,* for appellees.

1. The minds of the parties never met. 9 Cyc. 245-6.

2. There was no intention to pay a second annual premium. There was only one liability and this was paid. No notice was given and none can be implied.

3. There was lack of mutuality. 64 Ark. 398, 406-7-8-9; 9 Cyc. 327, note 9, 329, note 21, 334 note 40.

4. Perdue's testimony was explanatory merely and did not vary or contradict the written contract.

5. The defendants had a right to withdraw from the contract at any time. 64 Ark. 398, etc. It was not contemplated that a bond should be given for a greater period than one year. All liability on the bond had ceased and no further payment of premium was due.

SMITH, J. Appellees were employed by the board of directors of a road improvement district in Lincoln County to construct a road in that county. To guarantee the faithful performance of the contract the board required the contractors to execute a bond, and in pursuance of this requirement appellees made application on September 23, 1914, to the Southwestern Surety Insurance Company through its agent at Pine Bluff for the bond which the road improvement district demanded. The application was accepted and the insurance company became surety on the bond in the penal sum of thirty-five

thousand dollars. The application blank consisted of four pages of printed matter upon which a large number of questions were asked and blank spaces provided for answers. This blank was so prepared as to be adapted to bonds of various kinds, and one clause of the application blank read as follows:

"If a contract bond or similar instrument, the terms of which guarantee the faithful performance of the contract, is executed or caused to be executed by the surety; or if following a proposal bond executed by the surety, a contract bond or similar instrument, the terms of which guarantee the faithful performance of the contract, is required of the contractor and executed by the surety, the indemnitor will immediately on the execution of said bond pay to said surety_____dollars ($_____) and a like sum per annum in advance; and the indemnitor also agrees that all the terms and conditions of this agreement shall cover and apply to the contract bond so executed."

This blank was not filled by the applicant, but on the receipt of the application at the home office of the insurance company the figures, "$329.67," were inserted, this being the premium charged.

The contract which appellees had with the improvement district does not appear in the record, but the complaint recites that it provided that the construction of the road should be completed within seven working months, with a proviso that delays due to the acts of the commissioners should not be regarded as constituting time spent in such construction, and with a provision for liquidated damages for each working day in excess of seven working months spent in the construction of the highway. The road was not completed within that time nor was it completed within one year from the date of the execution of the bond and had not been completed at the time of the trial of this cause in the court below.

The Southern Surety Company succeeded the Southwestern Surety Insurance Company and assumed all the contracts of that company.

A premium of $329.67 was paid, and at the expiration of one year another premium was demanded by the company, and this suit was brought therefor against appellees upon their refusal to pay.

Appellees were permitted over objection of appellant to show that the term, "working months," did not necessarily mean calendar months, but meant time in which the contractor could do work of the character covered by the contract. And they were also permitted over objection of appellant to show that the delay in the construction of the road resulted from the failure of the road district to provide the necessary funds to pay for the work as it progressed. And over appellant's objection appellees were also permitted to show that they had notified the agent of the company before the expiration of the year that no further bond would be required or premium paid.

We do not know what the provisions of the bond are except as they are recited in the allegations of the pleadings, but it appears that it was conditioned that the contractors should faithfully perform the contract. As has been said, the application was so prepared as to be adapted for a bond of any kind, and its provisions must, of course, be construed most strongly against the company. It was not improper for the court to consider the character of the contract to cover which the application for the bond was made. It was in the contemplation of the parties that the contract would be completed in seven working months, which was shown to be ordinarily less than twelve calendar months, and the work was not completed within that time because of the default of the improvement district. Its funds became exhausted, and the work was stopped on that account and has not been resumed. Under these circumstances the contractors had the right to notify their surety that the bond was no longer required, and that notice was given.

It is not of controlling importance that the blank space in which the amount of the premium was later written was not filled by the applicant or by the agent who took the application, because the parties contemplated that the application would become effective upon its receipt at the home office of the company and its approval there and the execution of the bond which the improvement district required; so that if it was essential to fill this blank, authority so to do was impliedly conferred upon the company. *Aetna Indemnity Co.* v. *Ryan,* 103 N. Y. Supp. 756; *Geo. Knapp & Co.* v. *Wilks,* 105 Ark. 243; *White-Wilson-Drew Co.* v. *Egelhoff,* 96 Ark. 105. Printed directions on the application blank required the agent to fill all blanks, and it was not improper for the court to hear testimony that the blank in question was not filled as tending to show that it was not regarded by the parties as being applicable to the character of bond for which application was being made.

The agent testified that the premium was arrived at by calculating a given per cent. on the face of the bond. Appellant insists, however, that the clause set out above should be read in connection with Clause 4 of the bond, which reads as follows:

"4. The contract premium, if there be no maintenance or guarantee, will be paid annually as above until the surety shall be discharged or released from any and all liability and responsibility upon said bond, and all matters arising therefrom, and competent written legal evidence of such discharge or release, satisfactory to the surety, is served thereon at its office in Denison, Texas. Where the contract bond covers any maintenance or guarantee of the work the contract premium will be paid annually until the indemnitor furnishes the surety with like evidence of the completion of the contract, which will be the commencement date of maintenance and maintenance premium."

It is conceded that no notice was sent to the home office of the company at Denison, Texas; but it is not

denied that notice was given to the local agent who took the application.

No contention is made that the bond of the contractor contained any provision for the maintenance or upkeep of the road, or that there was anything in connection with the contract for the construction of the improvement which would have extended the liability of the contractor beyond the time of the completion of the contract, and clause 4 is, therefore, of no controlling importance.

Upon a consideration of all the testimony in the case, we think the court was warranted in the finding made that the application did not contemplate that a bond would be required for a greater period than one year, for the contract was not one under which any liability could ordinarily have arisen after the first year. There are, of course, many contracts the performance of which would necessarily or likely extend over a period of more than a year and where liability of the surety might accrue in one year or in another, and it was the evident purpose of the provisions of the application which we have set out to require the payment of a premium as long as this liability continued and to make the notice given to the company at its office at Denison the evidence of the termination of this liability. But to hold this clause 4 applicable to the facts of this case would be to construe it as imposing a penalty for the failure to give this notice. The contractor had no further need of a bond and had so notified the agent of its surety. If there was any liability under this bond, that liability had already accrued and the premium paid covered the assumption of that risk, and the judgment prayed by the company was, therefore, properly refused.   Affirmed.