ROSKAM-SCOTT COMPANY, Appellant, *v.* FLORA L. THOMAS, Respondent.

First Department, November 17, 1916.

Landlord and tenant — negotiations between tenant and agent of owner constituting contract for lease within meaning of section 259 of Real Property Law — purpose of statute — action to compel execution of lease — temporary injunction.

A letter by the owner of property to her agent with whom she had directed a tenant to negotiate, stating that she was willing to renew the lease, is equivalent to an offer directly made to the tenant, and when accepted by it becomes a binding contract, within the meaning of section 259 of the Real Property Law, providing that a contract for a lease "is void, unless the contract, or some note or memorandum thereof, expressing the consideration, is in writing, subscribed by the lessor or grantor, or by his lawfully authorized agent."

The purpose of said statute is to prevent fraud in the claiming of an oral contract giving the right to possession of real property where none exists.

The plaintiff in an action to compel the execution of a lease in accordance with such an agreement between it and the agent of the owner is entitled to a temporary injunction.

APPEAL by the plaintiff, Roskam-Scott Company, from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 24th day of October, 1916, denying its motion for an injunction *pendenté lite.*

*Milton Dammann,* for the appellant.

*Paris S. Russell,* for the respondent.

SMITH, J.:

Defendant is the owner of premises at the corner of Broadway and Sixty-third street in the city of New York. The second floor of these premises has been for some time occupied by the plaintiff under a lease from the defendant. Notice was given in pursuance of said lease that said tenancy would terminate upon October 1, 1916. Prior to. said date, and in August, 1916, the plaintiff wrote to the defendant in reference to a new lease of said premises to begin upon October first. In respect thereto upon August 16, 1916, the defendant wrote to the plaintiff: "I have written to Mr. Coffin regarding the building, and you can take it up with him." Mr. Coffin was the president of S. Osgood Pell & Co., the real estate agents having the property of the defendant in charge. Upon August 19, 1916, the defendant wrote to Mr. Coffin in reference to the leasing of these premises and others in the same building, and in that letter stated: "If Mr. Roskam cares to stay at the price quoted, $4,500 for the second floor for one year and $5,000 for two years more, I should be pleased to retain him." Upon the twenty-first of August Mr. Coffin met Mr. Roskam, the plaintiff's president, and read to him this extract from the letter of the defendant. Thereupon Mr. Roskam on behalf of the corporation agreed to said terms. A lease in accordance with these terms was drawn by Pell & Co., signed by the plaintiff, and was forwarded by Pell & Co. to the defendant for her signature with a letter which read in part as follows: "After receiving your letter this morning, I went up to the building to see what I could do with the various tenants. Mr. Roskam maintained that the cancellation clause in the lease was put in with the understanding that you would have possession in the case of sale and not -for cancellation of his lease in order to raise his rent. I persuaded him to stay on the basis you suggested. I drew up new leases, copies of his previous lease, with the exception of rental, terms, allowances for repairs and renewals, and secured his signature." The defendant neglected to sign said lease forwarded to her, and afterwards leased the property to another party. After the first of October, upon the refusal of the plaintiff to surrender possession of the premises, she instituted summary proceedings to

dispossess him. This action was then brought to compel the execution of a lease in accordance with the agreement between the plaintiff and Pell & Co. heretofore stated. Application was made for a temporary injunction, which application has been denied by the Special Term upon the ground that the con-tract for a lease was not in writing as required by section 259 of the Real Property Law (Consol. Laws, chap. 50; Laws of 1909, chap. 52). That section provides that a contract for a lease "is void, unless the contract, or some note or memo-randum thereof, expressing the consideration, is in writing, subscribed by the lessor or grantor, or by his lawfully author ized agent." The purpose of this statute is to prevent fraud in the claiming of an oral contract giving the right to posses-sion of real property where none exists. For the protection then of the owners of the property it is required that the con-tract, or a note or memorandum thereof, should be in writ-ing and signed by the lessor or his duly authorized agent. The statute itself does not require the contract to be in writ-ing provided a note or memorandum thereof be in writing and properly signed. Under this statute it has been held that that note or memorandum may be in a letter written by the lessor to his agent. In *Gibson* v. *Holland* (L. R. 1 C. P. 1) the opinion in part reads: "Now a note or memorandum is equally corroborative, whether it passes between the parties to the contract themselves, or between one of them and his own agent. Indeed, one would incline to think that a statement made by the party to his own agent would be the more satis-factory evidence of the two." . (Citing authorities.) In *Bristol* v. *Mente* (79 App. Div. 67) the only note or memorandum was contained in a letter from the defendant to a broker author-ized by the defendant to sell, and it was held sufficient to take the case out of the statute. That case was affirmed in the Court of Appeals (178 N. Y. 599). In *Peabody* v. *Speyers* (56 N. Y. 230) it is held that a letter written by an agent to his principal, even though the principal was undisclosed as a principal to the plaintiff, of which the plaintiff had no knowledge, was suf-ficient to perfect the memorandum of sale. In *Welford* v. *Beazely* (3 Atk. 503) Lord Chancellor HARDWICKE held that a letter to a man's own agent has been deemed a signing, within

the statute, even though the party never intended to bind himself by it. In the opinion of Mr. Justice LESLIE W. RUSSELL, made the opinion of the General Term, Third Department, in *Barnett* v. *McCrea* (27 N. Y. Supp. 820), it is stated: "The statute itself does not require the contract to be signed, but provides that a note or memorandum of it suffices for the purpose upon which the statute itself is based. Following this undoubted object, it has been frequently held that letters signed by a party's agent, and sent to the principal, are ample evidence to satisfy the purpose of the statute; and there is no reason why this should not be so. The Statute of Frauds is not a trap, but a wholesome law for the production of written evidence, and is satisfied if that evidence exists. The whole contract may be evidenced by such a writing as a letter by an agent to a principal; or, where there are partial writings, exhibiting portions of the terms of the contract, such a letter may furnish the additional information necessary to complete the contract, and to charge the party sued upon such an obligation."

The justice at Special Term denied the motion mainly upon the authority of *Haydock* v. *Stow* (40 N. Y. 363). In that case a general power to sell was given to a broker. Thereafter a would-be purchaser to whom that power was exhibited wrote across the paper his acceptance of the terms therein specified. This was held not to be sufficient under the statute requiring the contract or a note or memorandum thereof to be in writing. But in the *Haydock* case no vendee was specified in the general power of sale, a minimum price only was named and the power was given not as an offer to a particular purchaser for a particular sale. In the *Barnett* case Mr. Justice RUSSELL, in speaking of that case, says: "The case of *Haydock* v. *Stow* (40 N. Y. 363) does not militate against this result. The paper referred to in that case was not designed as a proposal, was not a narration of what had been done, and, therefore, neither as a proposition to be acted upon, nor a memorandum of what had been done, did it suffice." In the case before us plaintiff had been notified to negotiate with Mr. Coffin, of Pell & Co., and Pell & Co. had been specifically notified that the defendant was willing to renew the plaintiff's lease for the consideration stated

in defendant's letter. If this letter had been written to the plaintiff instead of to Pell & Co. no doubt would exist that it was a proposition sufficient in law to bind the defendant. The fact that it was written to her agent, with whom the defendant had directed the plaintiff to negotiate, is equivalent to an offer directly made to plaintiff and when accepted by the plaintiff became a binding contract, within section 259 of the Real Property Law.

Upon the record here presented it would appear that the lease signed by the plaintiff is in accordance with the written authorization of the defendant, and, therefore, we think that the injunction *pendente lite* should have been granted.

The order appealed from is reversed, with ten dollars costs and disbursements, and the temporary injunction prayed for granted.

CLARKE, P. J., LAUGHLIN, DOWLING and DAVIS, JJ., concurred.

Order reversed, with ten dollars costs and disbursements, and motion for temporary injunction granted. Order to be settled on notice.